# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8100 | **DATE** | 8/10/2004 |
| **CASE TITLE** | Panduit Corporation vs. Hellermanntyton Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 1 Sept. 04 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Concerning HellermannTyton's Motion for Partial Judgment on the Pleadings, the Court STAYS the motion as it entirely concerns the previously stayed infringement claim.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | AUG 11 2004 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | CLERK | | |
| WAP | courtroom deputy's initials | | 2004 AUG 11 AM 8:26 Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |



PANDUIT CORPORATION,

    Plaintiff,

  v.

HELLERMANNTYTON CORPORATION,

    Defendant.

Case No. 03 C 8100

Hon. Harry D. Leinenweber

FILED

AUG 1 0 2004

## MEMORANDUM OPINION AND ORDER

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

In 2001, Plaintiff Panduit Corporation (hereinafter, "Panduit") resolved a dispute with Defendant HellermannTyton Corporation (hereinafter, "HellermannTyton") by signing a settlement agreement in which HellermannTyton agreed to stop making and selling certain products to avoid infringing Panduit's U.S. Patent No. 5,998,732 (the "'732 Patent"). Panduit has now brought this action against HellermannTyton for infringement of its '732 Patent, and breach of the 2001 settlement agreement. The Court has since stayed the infringement claim pending a reexamination of the '732 Patent by the Patent and Trademark Office, but the breach of contract claim remains active. As part of litigating these two claims, the Court asked both parties to submit Markman claim construction briefs. Panduit's initial brief sought construction of only Claim 1 of the patent's 24 claims. In response, HellermannTyton requested construction of only six terms within Claim 1. The Court's claim construction follows below.

HellermannTyton also submitted a Motion for Judgment on the pleadings with respect to Claims 2-24.

## I. **DISCUSSION**

### A. Markman **Claim Construction**

#### 1. "A projection extending laterally from a top wall of the offset power box"

There are six disputed phrases within Claim 1 requiring the Court's interpretation. Panduit asks the Court to construe the first disputed phrase, "a projection extending laterally from a top wall of the offset power box," as meaning that "the claimed 'projection' is formed integrally with a top surface of the offset power box. The projection extends laterally toward the trunking duct." HellermannTyton counters by arguing that "[t]o require a projection that extends laterally from a top wall of the offset power box means that the top wall of the offset power box cannot be the extension itself, otherwise the 'top wall' would not have an extension." Thus, with respect to disputed phrase one, it appears the parties disagree about only one thing: whether the "projection" constitutes a separate piece from the top wall (HellermannTyton's interpretation), or is formed integrally with the top surface of the offset power box (Panduit's interpretation).

Panduit supports its claim by arguing that HellermannTyton's interpretation would exclude the preferred embodiment. HellermannTyton disputes this, claiming that the preferred embodiment has both a top wall and a separate lateral extension.

After reviewing the illustrations that depict the '732 Patent's preferred embodiment, the Court agrees with Panduit. Based on these diagrams, the Court finds that the "projection" is integrated entirely with the "top wall," forming a single element.

As a result, the Court accepts Panduit's interpretation of disputed phrase one. Although HellermannTyton's reading has some linguistic appeal, "a claim construction that excludes a preferred embodiment is rarely, if ever, correct." Dow Chem. Co. v. Sumitomo Chem. Co., 257 F.3d 1364, 1378 (Fed. Cir. 2001). Hellermann-Tyton has given the Court no reason to depart from this general rule. Therefore, the Court finds for Panduit as to the construction of disputed phrase one.

    2. "An opening formed in the abutment portion of the projection is in communication with an aperture framed in a side wall of the offset power box adjacent the duct."

HellermannTyton breaks the above clause into disputed phrases two [". . . abutment portion"], three ["aperture formed in a side wall"] and four ["opening . . . is in communication with an aperture"]. However, for purposes of judicial efficiency, the Court finds that it makes more sense to discuss phrases two and three together.

Panduit asks the Court to define the "opening formed in the abutment portion" as an "open area made within the cross-section of the projection at its end portion." Linguistically, this is nearly identical to HellermannTyton's preferred reading, in which the

phrase means "the abutment portion must have a void space within its limits." However, although similar in wording, the two parties place different conditions and limitations on the phrase. The Court discusses these disagreements in claim construction below.

Panduit and HellermannTyton clash as to whether the "opening" is located in the "abutment portion" or the "projection at its end portion." Panduit argues that the phrase "opening formed in the abutment portion of the projection" really means "open area made within the cross-section of the projection at its end portion." Panduit states that this construction is "made clear in the specification," but does little else to support its construction. In contrast, HellermannTyton notes that earlier the patent described the "abutment portion" as "depending from a farthest extent of the top portion." HellermannTyton defines (and Panduit offers no counter-definition) "depends" as "hang down, be suspended from." From this HellermannTyton concludes that the abutment portion must hang down from the farthest extent of the top portion. In doing so, HellermannTyton argues that the '732 Patent distinguishes between the effective end portion of the projection, and the abutment portion of this projection. This Court agrees with HellermannTyton. The patent clearly requires an opening in the "abutment portion," which is an area that hangs down or descends from the farthest point of the top surface of the

projection. Accordingly, the opening must be in the descended portion, and cannot be in the top portion's end portion.

The parties also spar over the definitions of "in" and "formed in." Technically, HellermannTyton contests these definitions only with respect to the "aperture" and not as to the "opening." However, given the general rule that a claim means the same thing each time in a given patent, the Court infers that HellermannTyton believes its definitions should apply to the entirety of Claim 1.

To begin, HellermannTyton's claim construction places several limits on "in" that Panduit mostly does not contest. Specifically, HellermannTyton argues that "In' does not mean 'on,' 'in' does not mean 'near,' 'in' does not mean 'over,' 'in' does not mean 'above,' 'in does not mean 'behind.'" HellermannTyton thus asks the Court to define "in" as "within the limits." With respect to the definition of "in," Panduit specifically disputes only HellermannTyton's contention that "'In' does not mean 'on'" – correctly noting that the Shorter Oxford English Dictionary lists "on" as one possible definition (Panduit also disputes that "'in' does not mean 'above'" but provides no support for its assertion). This leads Panduit to argue for the broader definition of "in" as "with reference to." However, although Panduit correctly notes that "on" is indeed a possible definition of "in," it is certainly not a common or typical one. For example, if Dick told Jane to look for a pen on the desk, he would be asking her to look on the

top of the desk. Conversely, if Dick asked Jane to look in the desk, he would be asking her to look inside a desk drawer. Here too, the specifications and diagrams clearly show an opening/aperture in the abutment portion/side wall, and not on the abutment portion/side wall. The Court therefore accepts HellermannTyton's above listed limitations on the definition of "in."

Although not generally objecting to HellermannTyton's limitations on "in," Panduit does argue for a specific definition of the term "formed in." Panduit argues that the term "formed in" requires merely that the opening and aperture consist of "open space." In Panduit's view, these terms do not demand that this open space take any particular shape or form. Conversely, in connection to the aperture, HellermannTyton contends that the term "formed in" requires a hole bounded by something on all sides, as that is the only type of void space that "completely resides within the limits or boundaries of the side wall." However, none of HellermannTyton's provided dictionary definitions state that "in" means "completely resides within the limits." Indeed, the preferred specification of the "opening" shows that the "opening formed in the abutment portion" does not "completely reside within" the abutment portion. Rather, the opening is bounded by the abutment portion on the right, left, and top – but not on the bottom. The Court infers from this that although the aperture and

opening both require open space, the open space does not need to take any particular shape or form. It could indeed be completely encircled - such as the void space contained within a square, like so - "□." Alternatively, it could be bounded on multiple sides, with one empty side - as in the English letters "U" or "C" or the Hebrew letters "ח" or "כ." The Court uses these analogies because its limited word processing capabilities do not enable it to copy the elaborate graphs found in the parties' briefs. Therefore, the Court mostly agrees with HellermannTyton that "formed in" means "formed within," but disagrees that it requires something that "completely resides within."

However, just because the opening and aperture is not limited to a specific configuration, e.g., a square, does not mean that the '732 Patent grants Panduit unlimited breadth in defining its scope. In particular, the Court takes issue with one portion of Panduit's proposed construction of an "aperture formed in a side wall." Panduit contends that the aperture can "extend the full height and width of the offset power box" (emphasis in original). In doing so, Panduit states that the "open side wall area would occupy the entire side wall area . . . there would be no solid side wall area." Panduit reaches its construction by noting that in the description of the preferred embodiment, "the longitudinal extent of the aperture 82 may be as large as the distance between the two alignment bosses 76 depending on the application." However,

Panduit fails to acknowledge, as HellermannTyton points out, that the description also states that "[t]he box side wall 40 also has an aperture 82 formed therein." This is consistent with the actual claim language, in which the aperture is "formed in a side wall." If, as Panduit claims, the aperture can consist of the entire side wall area, then there would be no "side wall" in which the aperture could be "formed in." Therefore, while the Court agrees with Panduit that the aperture and opening need not take any specific shape, they clearly cannot be so expansive so that they cease to be "formed in" something else - namely, something solid. The '732 Patent, by stating that the opening is "formed in the abutment portion" and that the aperture is "formed in a side wall," by the necessity of plain English requires both a solid abutment portion and a solid side wall to exist. Still, Panduit's argument that the patent grants flexibility as to the longitudinal extent of the aperture has merit. Therefore, the Court finds that while the aperture and opening cannot be so wide such that the corresponding abutment portion or side wall ceases to exist, the '732 Patent nevertheless permits substantial leniency in how wide or narrow the opening or aperture must be.

> 3. "opening . . . is in communication with an aperture formed in a side wall of the offset power box adjacent the duct"

HellermannTyton proposes a claim construction, and Panduit does not dispute, that Claim 1 requires two distinct structures; an

opening and an aperture, both of which must be in communication with each other. HellermannTyton argues that the "opening" cannot also be the "aperture" since if that were the case, the opening cannot communicate with the aperture. Moreover, HellermannTyton also proposes that the term "an opening . . . is in communication with an aperture" to require 1) an opening; 2) a separate aperture formed in the sidewall (both of which are discussed in the pervious section); and 3) joinder of the opening and the aperture by two adjacent interior flanges, the exterior of a duct, and a bottom surface of the top portion. Because HellermannTyton's construction is consistent with the preferred embodiment of the '732 Patent and because Panduit does not provide a competing construction, the Court accepts HellermannTyton's interpretation of this term.

> 4. "An abutment surface depending from a top surface of the extension adapted to be disposed flush against the abutment portion of the projection"

With respect to disputed phrase five, Panduit defines the term "abutment surface" as an edge portion having an abutment surface formed integrally with a top surface of the communication extension. HellermannTyton at least accepts that the "abutment surface" is on the separate "communication extension." The parties also seem to be in agreement that the "abutment portion" is the surface on the projection of the offset power box. Panduit also claims, and HellermannTyton does not contest, that the abutment surface of the extension and the abutment surface of the projection

(which HellermannTyton refers to in its brief as "abutment portion") are separate elements.

The abutment surface on the surface of the communication extension, according to Panduit, is "adapted to fit flush against" the abutment surface on the projection of the offset power box (abutment portion). In turn, HellermannTyton asks the court to define the "abutment surface" as the portion of the extension "that is 'disposed flush against the abutment portion of the projection.'" The Court interprets HellermannTyton's definition to require that the "abutment surface" is formed only after the communication extension and the offset power box, through their respective abutment surfaces, are flushed together. In other words, HellermannTyton's construction refers to the area formed by the joinder of the communication extension and the projection of the offset power box. However, Claim 1 explicitly states that the abutment surface depends from the "top surface of the extension adapted to be disposed flush against the abutment portion." (emphasis added). HellermannTyton's interpretation completely disregards the term "to be" which the Court accepts as an indicator that the description is of the surface found on the separate and independent top surface of the communication extension, which is designed later to fit flush against the "abutment portion." The description, as HellermannTyton would require, is not necessarily

limited to the area formed after the two bodies are joined together.

Furthermore, HellermannTyton itself offers two competing constructions of "abutment surface." HellermannTyton first agrees with Panduit that the "abutment surface" is on the separate communication extension, and later asks the Court to define "abutment surface" as portion of the communication extension that is "disposed flush against the abutment portion of the projection," which, as described above, is an area formed against the "abutment portion." Therefore, the Court adopts Panduit's proposed construction for this term.

5. "A routing notch formed in the abutment surface"

As to disputed phrase six, Panduit proposes the term "a routing notch formed in the abutment surface" to have a "clearance in the edge portion of the communication extension through which wires may be routed out." HellermannTyton counters that "because the 'abutment surface' is the portion of the communication extension that is 'disposed flush against the abutment portion of the projection,' the communication extension must contain within its limit the 'routing notch.'" As stated in the previous section, the Court does not accept HellermannTyton's definition that the "abutment surface" forms part of the communication that is "disposed flush against the communication extension." Therefore, the routing notch is not a "hole" bounded on all sides by solid

structure, as HellermannTyton's proposed claim construction would require. Panduit's interpretation that the "routing notch" is a clearance (or open area) made within the cross-section of the communication extension is also supported by the figure view of the communication extension (FIG. 5). Panduit's argument is also consistent with the description of the preferred embodiment which states that "[a] routing notch 116 is formed in the abutment surface 94 between the longitudinally spaced extension latching elements 112 adjacent the power box 12, and preferably corresponding in longitudinal extent to the opening 80 formed in the abutment portion 74 of the power box 12. A slight bevel 118 further defines the routing notch 116 and provides increased clearance for routing the power conductors 34." The Court also notes that this construction is consistent with previous interpretations in which the Court decided that the term "formed in" does not necessarily require something that "completely resides within."

As a result, the Court also accepts Panduit's interpretation of this disputed term because HellermannTyton's construction excludes the preferred embodiment.

### B. Motion for Partial Judgment on the Pleadings

In addition to the dueling Markman briefs, HellermannTyton also has submitted a motion for partial judgment on the pleadings. Specifically, HellermannTyton seeks a judgment on non-infringement

on Claims 2-24 of the '732 Patent. HellermannTyton argues that Panduit admitted that HellermannTyton's Offset Box Assembly product does not infringe Claims 2-6, 9-16, and 18-22. Furthermore, HellermannTyton contends that Panduit failed to submit any claim construction for Claims 7, 8, 17, 23, and 24. As a result, HellermannTyton argues that the Court cannot find infringement of these claims.

As an initial matter, the Court notes that since the date in which HellermannTyton filed its motion for judgment on the pleadings, the Court has stayed the patent infringement portion of Panduit's case. HellermannTyton's motion for judgment on the pleadings specifically asks the Court only for a "judgment of non-infringement of Claims 2-24" of the '732 Patent – and not for judgment on the pleadings as to Panduit's Count II for breach of the settlement agreement. As the infringement claim is stayed in its entirety, so is HellermannTyton's motion for judgment on the pleadings.

## II. CONCLUSION

For the reasons stated herein, the Court:

1. Accepts Panduit's construction on the disputed phrase "a projection extending laterally from a top wall of the offset power box."

2. With respect to the phrase "an opening formed in the abutment portion of the projection is in communication with an

aperture formed in a side wall of the offset power box adjacent the duct," the Court:

    a)    accepts HellermannTyton's reasoning that the abutment portion must hang down from the farthest extent of the top portion;

    b)    accepts all of HellermannTyton's limitations on the word "in";

    c)    rejects HellermannTyton's contention that "formed in" requires something that "completely resides within";

    d)    rejects Panduit's claim that the aperture and opening may be so wide such that the corresponding abutment portion or side wall ceases to exist; and

    e)    accepts HellermannTyton's construction that Claim 1 requires two distinct structures – an opening and an aperture.

3.    Accepts accepts Panduit's interpretation of the remaining two disputed terms: "an abutment surface depending from a top surface of the extension adapted to be disposed flush against the abutment portion of the projection," and "a routing notch formed in the abutment portion."

4.    Concerning HellermannTyton's Motion for Partial Judgment on the Pleadings, the Court **STAYS** the motion as it entirely concerns the previously stayed infringement claim.

**IT IS SO ORDERED.**

Dated: August 19, 2014

                                        Harry D. Leinenweber, Judge
                                        United States District Court