FILED
FEB 9 2005
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PANDUIT CORP.,

    Plaintiff,

v.

HELLERMANNTYTON CORP.,

    Defendant.

Case No. 03 C 8100

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Panduit Corp. (hereinafter, "Plaintiff") filed a two-count complaint against Defendant Hellermanntyton Corp. (hereinafter, "Defendant") for patent infringement of U.S. Patent No. 5,998,732 (the "'732 Patent")("Count One") and for breach of contract for violating the terms of the parties' settlement agreement (the "Settlement Agreement")("Count Two"). Before the Court are the parties' cross-motions for summary judgment on Count Two, and Plaintiff's motion to lift the stay and for partial summary judgment on Count One.

### I. FACTUAL BACKGROUND

The '732 Patent for a raceway outlet station was issued in December 1999. In a separate, earlier action, Plaintiff filed suit against Defendant for infringement of its '732 Patent. Effective November 7, 2001, Plaintiff and Defendant entered into the Settlement Agreement to resolve their pending litigation. As

consideration, both parties agreed to waive any claims for damages or infringement relating to the '732 Patent arising before such date.

The Settlement Agreement provides that Defendant will cease for the life of the '732 Patent "making, using, selling, offering for sale, importing . . . Subject Products." The Settlement Agreement defines "Subject Products" as "(i) the HellermannTyton Multi-Channel Raceway Side Electric Box (HellermannTyton Part No. MCR-SEB) and (ii) all products, existing now or in the future, covered by any claim of the Panduit Patent."

## II. **PROCEDURAL BACKGROUND**

Defendant moved to stay both Counts of the complaint pending reexamination of the '732 Patent by the Patent and Trademark Office (the "PTO"). In February 2004, the Court stayed Count One and the related patent validity issues, but denied the motion to stay Count Two. On August 10, 2004, the Court issued a Memorandum and Order construing Claim 1 of the '732 Patent and staying Defendant's motion for judgment on the pleadings with respect to Claims 2-24 of the '732 Patent (the "Claim Construction Order"). Subsequently, on August 14, 2004, the Court modified part of its Claim Construction Order.

Also in August 2004, the Court denied Defendant's renewed motion to stay Count Two after concluding that the PTO's reexamination of the '732 Patent would not affect Defendant's

liability for breach of the Settlement Agreement. In so holding, the Court concluded that according to the plain terms of the Settlement Agreement, Defendant agreed not to produce for the life of the '732 Patent any item "covered by any claim" of the patent. Thus, Defendant "contractually agreed -- in exchange for valuable consideration -- not to produce products 'covered' by Patent 732, implicitly regardless of whether Patent 732 or its included claims are valid or invalid." (Stay Reexamination Order, at 7). The Court also construed the term "life of the patent" to mean the date on which the '732 Patent ceases to have legal force, whether by natural expiry or a holding of invalidity by the PTO or a court.

Subsequently, on November 17, 2004, the PTO issued a Notice of Intent To Issue An Ex Parte Reexamination Certificate (the "Intent Notice") purporting to confirm the patentability of the '732 Patent.

### III. **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment on the issue of patent infringement is appropriate "when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the

properly construed claim either is or is not found in the accused device." Goldenberg v. Cytogen, Inc., 373 F.3d 1158, 1163 (Fed. Cir. 2004)(citations omitted). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In assessing the movant's claim, the court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmovant. Miller v. Am. Family Mut. Ins. Co., 203 F.3d 997, 1003 (7th Cir. 2000). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations" contained in its pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990).

## IV. DISCUSSION

### A. Plaintiff's Motion to Lift Stay

Plaintiff seeks to lift the stay of Count One and the related validity issues in light of the PTO's issuance of the Intent Notice. Defendant responds that it would be premature to lift the

stay because the PTO can review and change its decision until the time that a Reexamination Certificate issues.

"In a reexamination proceeding, when the time for appeal has expired or any appeal proceeding has terminated, the . . . [PTO] will issue and publish a certificate canceling any claim of the patent determined to be unpatentable, confirming any claim of the patent determined to be patentable . . . " 35 U.S.C. § 307(a). The PTO can reconsider an earlier action until the reexamination is complete and a reexamination certificate is issued. Although a notice of intent indicates the PTO's intent to issue a reexamination certificate, the PTO retains jurisdiction to further review the matter. See In re Bass, 314 F.3d 575, 577 (Fed. Cir. 2002).

Because the PTO has not yet issued a reexamination certificate on this matter, it is premature to lift the stay of Count One and related patent validity issues at this time. Accordingly, Plaintiff's Motion to Lift the Stay and for Partial Summary Judgment of Count One is **DENIED WITHOUT PREJUDICE**. Plaintiff may resubmit its motion after such time as the PTO has issued a reexamination certificate.

### B. Breach of Contract

Plaintiff alleges that Defendant breached the parties' contract by producing and selling the Offset Box Assembly (the "Accused Product"), which Plaintiff contends constitutes a "Subject

Product" under Sections (1)(b)(i) and (ii) of the Settlement Agreement. Both parties moved for summary judgment on Count Two for breach of contract.

The Settlement Agreement, discussed at greater length in Section I supra, is a contract governed by Illinois law. As such, the proper analysis is to look first at the plain language of the provision at issue. "If the language of the contract unambiguously provides an answer to the question at hand, the inquiry is over." Lumpkin v. Envirodyne Industries, Inc., 933 F.2d 449, 456 (7th Cir. 1991)(citation omitted). Clear contract terms "must be given their ordinary and natural meaning." Grubb & Ellis Co. v. Bradley Real Estate Trust, 909 F.2d 1050, 1056 (7th Cir. 1990)(citation omitted).

The plain language of the Settlement Agreement provides that Defendant cannot produce two distinct types of "Subject Products": "(i) the HellermannTyton Multi-channel Raceway Side Electric Box (HellermannTyton Part No. MCR-SEB), and (ii) all products, existing now or in the future, covered by any claim of the Panduit Patent." The Court holds as a matter of law that the Settlement Agreement is clear and unambiguous on its face. As such, the meaning of the contract is that it prohibits one specific product/part number in the first category, and prohibits all other products that infringe in the second, catch-all category. See Lumpkin, 933 F.2d at 456.

1. Is the Accused Product a "Subject Product" under Section 1(b)(i) of the Settlement Agreement?

Plaintiff initially alleges that the Accused Product is materially identical to, and virtually unchanged from, the Raceway Side Electric Box and therefore is a "Subject Product" under Section 1(b)(i) of the Settlement Agreement. Defendant responds that the Accused Product is not a "Subject Product" under Section 1(b)(i) because it is a separate product, not the Raceway Side Electric Box. Defendant, citing Lund Industries, Inc. v. Go Industries, Inc., 938 F.2d 1273, 1275-76 (Fed. Cir. 1991), additionally criticizes Plaintiff's reliance on similarities between the Accused Product and the Raceway Side Electric Box because there was no prior finding of infringement. Further, Defendant asserts correctly that the comparison of the Accused Product and the Raceway Side Electric Box is improper even in the patent infringement context, which "requires comparison of the accused device to the patent claims, not to another design." See id. at 1275.

This claim is easily disposed of. Count Two is for breach of contract, not patent infringement. As discussed, Section 1(b)(i) clearly and unambiguously defines "Subject Product" narrowly as a one, specific product -- the Raceway Side Electric Box, Part No. MCR-SEB. Plaintiff does not dispute that the Accused Product is not physically the same product as the Raceway Side Electric Box. In fact, Plaintiff's diagrams demonstrate the differences

between the two products. (See, e.g., Pl. Supp. Mem. at 4). Therefore, the Accused Product is not a "Subject Product" as defined under Section 1(b)(i) of the Settlement Agreement, and Defendant is entitled to summary judgement on this issue.

2. Is the Accused Product a "Subject Product" under Section 1(b)(ii) of the Settlement Agreement?

Plaintiff also argues that Defendant breached the Settlement Agreement because the Accused Product infringes, and thus is covered by, the '732 Patent. Evaluating patent infringement is a two-step process. The first step requires that the claims of the patent be construed as a matter of law to determine their meaning. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd 517 U.S. 370 (1996). The Court has already performed this function. The second step is to compare the construed claims to the accused device to determine if it infringes, which is an issue of fact for the fact finder. See id. "Infringement requires the patentee to show that the accused device contains or performs each limitation of the asserted claim, or an equivalent of each limitation if not satisfied literally." Moba, B.V. v. Diamond Automation, Inc., 325 F.3d 1306, 1313 (Fed. Cir. 2003).

As an initial matter, the Court notes that only Claim 1 of the '732 Patent is at issue here. Because the Court denied Plaintiff's motion to amend its Complaint to add additional Claims to Count Two, Plaintiff did not have leave of Court to file briefs or other

documentation relating to such additional claims.  Therefore, the Court disregards all arguments in Plaintiff's briefs and other supporting materials that address purported infringement of any Claims of the '732 Patent other than Claim 1.

### a. Literal Infringement

Literal infringement "exists when each of the claim limitations 'reads on,' or in other words is found in, the accused device." Allen Engineering Corp. v. Bartell Industries, Inc., 299 F.3d 1336, 1345 (Fed. Cir. 2002).  It is thus axiomatic that an accused device does not directly infringe a patent unless every claim limitation or its equivalent is present in the accused device.  See Malta v. Schulmerich Carillons, Inc., 952 F.2d 1320, 1325 (Fed. Cir. 1991).

Defendant argues that the Accused Product is not covered by Claim 1 because it does not contain some of the claim limitations as construed.  Specifically, Defendant contends that the following limitations are absent in the Accused Product:  (1) an aperture in any side wall; (2) an aperture adjacent to any duct; (3) an abutment portion; (4) an opening in any abutment portion; and (5) an opening in communication with an aperture.

The Court begins its analysis with the limitation:  "a projection extending laterally from a top wall of the offset power box having a top portion and an abutment portion depending from a furthest extent to the top portion adapted to be disposed

substantially aligned with an adjacent edge of the top access opening." The Court previously construed the disputed phrases of this limitation as follows: (a) "the projection is integrated entirely with the 'top wall,' forming a single element"; (b) an "abutment portion" is an "area that hangs down or descends from the farthest point of the top surface of the projection"; and (c) the abutment portion is a solid surface. (Claim Construction Order, at 3-5, 8). The Court also concluded that the projection's effective end portion and projection's abutment portion are different structures. (See id. at 4).

Defendant asserts that the Accused Product does not read on this limitation because it has no abutment portion and is "entirely devoid of any structure where Panduit's claimed 'abutment surface' must reside" and therefore "there is nothing [for an abutment portion] to hang from." (Def. Resp. Brief, at 9-10). Plaintiff responds that the Accused Product's "two "⊓"-shaped surfaces joined by a central horizontal elongated surface at the bottom" form the abutment portion. (Pl. Brief at 9). Plaintiff alternately contends that the two "⊓"-shaped surfaces themselves collectively constitute an "abutment portion." (Pl. Reply Brief at 3-5).

As discussed, to literally infringe, the first part of this limitation requires a projection that extends laterally to form a single element with the top wall. The Court's thorough review of the parties' briefs, drawings and diagrams, and submissions reveals

that the Accused Product does not have such a projection. In fact, the Accused Product does not even have a "top wall" that extends laterally across it. However, even assuming that the Accused Product had a projection, the claim limitation specifies that the Accused Product must also have an solid abutment portion that <u>hangs down</u> from the farthest point of the <u>top portion</u> of the projection. Plaintiff admits that the central horizontal elongated surface connects the two "n"-shaped surfaces <u>at the bottom</u>. It is clear that such horizontal elongated surface does not descend or hang down from the <u>top portion</u> of the projection's end portion.

Plaintiff alternatively argues that the two "n"-shaped structures, without a horizontal connecting surface, collectively constitute <u>an</u> abutment portion because they each have a surface that hangs down from the top corner of the top wall. The Court rejects Plaintiff's argument for several reasons. First, the claim limitation is for "<u>an</u> abutment portion" that hangs down from the projection's outermost corners, not multiple separate abutment portions. The second limitation of Claim 1 also refers to the abutment portion in the singular -- "<u>the</u> abutment portion of the projection." Second, even if two separate abutment portions could constitute "<u>an</u> abutment portion" as argued by Plaintiff, as construed the abutment portion must be a solid surface that is differentiated from the projection's end portion. The two "n"-shaped structures are located on the far left and right sides of

the Accused Product. The only portions of the structures that appear to descend from the top portion of the end portion are the outer edges of the "⊓"- shaped structures, which are actually sides of the alleged abutment portion and the Accused Product. Thus, even if the Accused Product had a projection, the structures of the Accused Product identified by Plaintiff are not a solid surface that hangs down or descends from the farthest portion of the projection's top portion.

The Court additionally notes that the second limitation is literally absent from the Accused Product. Such limitation requires "an opening formed in the abutment portion of the projection [be] in communication with an aperture formed in a side wall of the offset power box adjacent to the duct." The Court construed the first part of such limitation as "the opening must be in the descended portion [of the abutment portion], and cannot be in the top portion's end portion." (Claim Construction Order, at 5). The limitation also requires a solid abutment portion and a solid side wall. (See id. at 8). The Court further construed that "in" means "within the limits" and "does not mean 'on,'... 'near,'... 'over'... 'above'... 'behind.'" (Id. at 5). Finally, while the '732 Patent permits "substantial leniency in how wide or narrow the opening must be," the term "formed in" means that "the aperture and opening cannot be so wide

such that the corresponding abutment portion or side wall ceases to exist." (Id. at 8).

Plaintiff contends that the open space between the two "n"-shaped structures constitutes an opening in the abutment portion and is bounded on the left, right, and bottom. Accordingly, Plaintiff asserts that such space is not so wide that the corresponding abutment portion ceases to exist. As previously argued, Defendant responds that the Accused Product does not have an abutment portion and that the Accused Product cannot literally infringe this claim limitation because there can be no opening in the descended portion of the abutment portion.

The Court agrees with Defendant. The open space must be formed in the <u>descended portion</u> of projection's <u>abutment portion</u>, and not the top portion's end portion. The open space identified by Plaintiff clearly does not descend or hang down from any structure, and is not formed in the projection's abutment portion as construed and cannot be formed in such portion as it is literally absent from the Accused Product. Thus, the Accused Product does not read on each of the Claim 1 limitations, and accordingly, does not literally infringe Claim 1. See Allen Engineering Corp., 299 F.3d at 1345. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for breach of contract under a theory of literal infringement.

### b. Doctrine of Equivalents

In the alternative, Plaintiff argues that Accused Product is covered by Claim 1 under the doctrine of equivalents. Plaintiff cites to the declaration of its expert, Charles Curley, to purportedly show that the Accused Product has structures that are only insubstantially different from Claim 1's limitations. Defendant responds that Curley's declaration provides only conclusory statements and does not raise any genuine issue of fact. Further, Defendant argues that the doctrine of equivalents is inapplicable here because several of Claim 1's limitations are completely absent in the Accused Product and do not have an equivalent element or structure. Both parties rely substantially on the same evidence and arguments as set forth above in the literal infringement section.

"The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722 (2002). A patentee may invoke this doctrine if the "accused device performs substantially the same function in substantially the same way to achieve substantially the same result" as the patented product. Malta, 952 F.2d at 1325; see also Ethicon Endo-Surgery, Inc. v. United States Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998). The doctrine of equivalents

analysis must be applied to each individual element of limitation of a patent claim, not to the invention as a whole. See Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical Co., 520 U.S. 17, 18 (1996). Moreover, to find infringement, the accused device must literally or equivalently possess all of the limitations of the patent's relevant claim. See Tronzo v. Biomet, Inc., 156 F.3d 1154, 1160 (Fed. Cir. 1998). If application of the doctrine would vitiate a claim limitation, "then there can be no infringement under the doctrine of equivalents as a matter of law." Id.

As the patentee, Plaintiff bears the burden of proving that Defendant infringed Claim 1 of the '732 Patent. See Vivid Technologies, Inc. v. American Science & Engineering, Inc., 200 F.3d 795, 806 (Fed. Cir. 1999). It is well-settled that an unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact. See Arthur A. Collins, Inc. v. Northern Telecom Ltd., 216 F.3d 1042, 1048 (Fed. Cir. 2000); Johnston v. IVAC Corp., 885 F.2d 1574 1578 (Fed. Cir. 1989). The Court's thorough review of the record reveals that Curley's Declaration is conclusory and devoid of facts upon which the conclusions were reached. Despite Plaintiff's contentions to the contrary, only two statements in Curley's entire declaration purport to provide any support whatsoever for his conclusory statements that the Accused Product's abutment portion and opening are equivalent to the corresponding claim limitations. (Curley

Declaration, at ¶¶ 11, 13). Such statements, however, do not discuss or provide factual support to identify the function or result of the elements of the Accused Product. Nor do such statements compare the differences between the elements of the Accused Product and the relevant limitations of Claim 1 to demonstrate that such differences are insubstantial to one of ordinary skill in the art or that the elements perform substantially the same function in substantially the same way to achieve substantially the same result as the relevant claim limitations. See Ethicon Endo-Surgery, Inc., 149 F.3d at 1315; Mahurkar v. C.R. Bard, Inc., 2004 WL 1982531 *8 (N.D. Ill. 2004)(citations omitted). Curley's declaration thus only provides unsupported legal conclusions on the ultimate issue of infringement. See Collins, 216 F.3d at 1048.

For these reasons, Plaintiff's evidence fails to show or even suggest that the Accused Product has elements that are insubstantially different than each claim limitation of Claim 1, and thus, Plaintiff fails to raise a genuine issue of material fact precluding summary judgment. See Phillips Petroleum Co. v. Huntsman Polymers Corp., 157 F.3d 866, 876 (Fed. Cir. 1998). The Court therefore grants summary judgment in favor of Defendant, and against Plaintiff, on Count Two for breach of contract by infringement under the doctrine of equivalents.

c. Dependent Claims

A dependent claim contains all of the limitations for the claim from which it depends. See 35 U.S.C. § 112, ¶ 4. Here, the Court's review of the '732 Patent reveals that Claims 2-8 depend from Claim 1 of the patent. In Count One, which is presently stayed (see Section IV.A supra), Plaintiff moves for patent infringement against Defendant in connection with the Accused Product. Because the Court has concluded that the Accused Product does not infringe Claim 1 of the '732 Patent by literal infringement or under the doctrine of equivalents, the Accused Product also does not infringe the dependent claims of Claim 1, including Claims 2, 3, 4, 5, 6, 7, and 8. Accordingly, the Court sua sponte grants partial summary judgment in favor of Defendant on Count One for patent infringement of Claims 2-8 of the '732 Patent. Claims 9-24 of the '732 Patent are not dependent on Claim 1, and thus remain stayed pursuant to Section IV.A. supra.

## IV. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Plaintiff's Motion to Lift the Stay and for Partial Summary Judgment on Count One is **DENIED WITHOUT PREJUDICE;**

2. The Plaintiff's Motion for Summary Judgment on Count Two for Breach of Contract is **DENIED;**

3. The Defendant's Motion for Summary Judgment on Count Two is **GRANTED;** and

4. The Court sua sponte **GRANTS** Partial Summary Judgment in favor of Defendant on Count One for patent infringement of Claims 2-8 of the '732 Patent.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: February 9, 2005